AF Approval ___NA_____         Chief Approval ___CAB____

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                     CASE NO. 6:23-cr-224-CEM-EJK

JORGE IVAN ORTIZ BUIL

## **PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, JORGE IVAN ORTIZ BUIL, and the attorney for the defendant, Thomas D. Sommerville, mutually agree as follows:

## A.     **Particularized Terms**

1.     Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Thirty through Thirty-Five of the Indictment.

Count One charges the defendant with conspiracy to commit concealment money laundering, in violation of 18 U.S.C. § 1956(h).

Counts Thirty through Thirty-Four charge the defendant with concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

Count Thirty-Five charges the defendant with structuring, in violation of 31 U.S.C. §§ 5324(a)(3) and 5324(d)(2).

Defendant's Initials _JOB_

2.    <u>Maximum Penalties</u>

Count One and Counts Thirty through Thirty-Four each carry a maximum sentence of 20 years' imprisonment, a fine of not more than $500,000, or twice the value of the monetary value or instrument involved, whichever is greater, a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count.

Count Thirty-Five carries a maximum sentence of 10 years' imprisonment, a fine of not more than $500,000, or twice the gross gain or gross loss from the offense, whichever is greater, a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    <u>Elements of the Offense(s)</u>

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

<u>First</u>:    two or more people agreed to try to accomplish a common and unlawful plan to commit concealment money laundering, in

Defendant's Initials _DOB_                    2

violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

Second: the Defendant knew about the plan's unlawful purpose and willfully joined in it

The elements of Counts Thirty through Thirty-Four are:

First: the Defendant knowingly conducted or tried to conduct a financial transaction;

Second: the Defendant knew that the money or property involved in the transaction were the proceeds of some kind of unlawful activity;

Third: money or property did come from an unlawful activity, specifically computer fraud and wire fraud; and

Fourth: the Defendant knew that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds.

For Count Thirty-Five, the term "structure" means to deposit, withdraw, or otherwise participate in transferring a total of more than $10,000 in cash or currency using a financial institution or bank by intentionally setting up or arranging a series of separate transactions, each one involving $10,000 or less, in order to evade the currency-reporting requirement that would have applied if fewer transactions had been made.  The elements of Count Thirty-Five are:

First: the Defendant knowingly structured or helped to structure a currency transaction;

Second: the purpose of the structured transaction was to evade the transaction-reporting requirements;

Third: the structured transaction involved one or more domestic financial institutions; and

Defendant's Initials _JOB_  3

> <u>Fourth</u>:    the Defendant structured the transaction while committing the money laundering conspiracy set forth in Count One.

4.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5.   <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to businesses whose funds were stolen and laundered during the course of the conspiracy charged in Count One.

6.   <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(1) and 31 U.S.C. § 5317(c)(1)(A), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $11,292 in proceeds the defendant admits he obtained as the result of his participation in the money laundering conspiracy to which the defendant is pleading guilty.  The defendant acknowledges and agrees that:  (1) the defendant obtained this amount as

Defendant's Initials _____                 5

a result of the commission of the offense(s), and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.  Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction.  The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program.  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

Defendant's Initials _____          6

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the

Defendant's Initials ___JOB___                7

defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing.  In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of

Defendant's Initials _____                    8

responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

       The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.**    <u>**Standard Terms and Conditions**</u>

    1.    <u>Restitution, Special Assessment and Fine</u>

       The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from

Defendant's Initials \_JOB\_        9

simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $1,600, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.  <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials ⟩⟩B                10

4.      <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.      <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the

Defendant's Initials  JOB          11

defendant, directly or through a nominee, and, by the execution of this Plea

Agreement, consents to the release of the defendant's tax returns for the previous five

years. The defendant similarly agrees and authorizes the United States Attorney's

Office to provide to, and obtain from, the United States Probation Office, the

financial affidavit, any of the defendant's federal, state, and local tax returns, bank

records and any other financial information concerning the defendant, for the

purpose of making any recommendations to the Court and for collecting any

assessments, fines, restitution, or forfeiture ordered by the Court. The defendant

expressly authorizes the United States Attorney's Office to obtain current credit

reports in order to evaluate the defendant's ability to satisfy any financial obligation

imposed by the Court.

    6.   <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor

bound by this agreement. The Court may accept or reject the agreement, or defer a

decision until it has had an opportunity to consider the presentence report prepared

by the United States Probation Office. The defendant understands and

acknowledges that, although the parties are permitted to make recommendations and

present arguments to the Court, the sentence will be determined solely by the Court,

with the assistance of the United States Probation Office. Defendant further

understands and acknowledges that any discussions between defendant or

Defendant's Initials  SOB         12

defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.      Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials JOB          13

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's

undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and

Defendant's Initials JoB          15

were this case to go to trial, the United States would be able to prove those specific

facts and others beyond a reasonable doubt.

12.     <u>Entire Agreement</u>

This plea agreement, including Exhibit A, constitutes the entire

agreement between the government and the defendant with respect to the

aforementioned guilty plea and no other promises, agreements, or representations

exist or have been made to the defendant or defendant's attorney with regard to such

guilty plea.

13.     <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this 2*6th* day of March, 2024.

ROGER B. HANDBERG
United States Attorney


_____          _____
JORGE IVAN ORTIZ BUIL              Dana E. Hill
Defendant                         Assistant United States Attorney


_____          _____
Thomas D. Sommerville             Chauncey A. Bratt
Attorney for Defendant            Assistant United States Attorney
                                  Deputy Chief, Orlando Division


Defendant's Initials JOB                    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                    CASE NO. 6:23-cr-224-CEM-EJK

JORGE IVAN ORTIZ BUIL

<u>PERSONALIZATION OF ELEMENTS</u>

For Count One, from on or about February 25, 2021, and continuing through on or about February 24, 2022, as set forth in the Indictment,

<u>First</u>:      Did two or more people agree to try to accomplish a common and unlawful plan to commit concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i)?

<u>Second</u>:  Did you know about the plan's unlawful purpose and willfully join in it?

For Counts Thirty through Thirty-Four, on each of the dates set forth in the Indictment,

<u>First</u>:      Did you knowingly conduct or try to conduct a financial transaction?

<u>Second</u>:  Did you know that the money or property involved in the transaction were the proceeds of some kind of unlawful activity?

<u>Third</u>:     Did the money or property come from an unlawful activity, specifically computer fraud or wire fraud?

<u>Fourth</u>:  Did you know that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds?

Defendant's Initials  _JOB_        17

For Count Thirty-Five, on the dates set forth in the Indictment,

First:      Did you knowingly structure or help to structure a currency
            transaction?

Second:     Was the purpose of the structured transaction to evade the
            transaction-reporting requirements?

Third:      Did the structured transaction involve one or more domestic
            financial institutions?

Fourth:     Did the currency transaction with the domestic financial
            institution(s) further another Federal crime?

Defendant's Initials __DB__            18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:23-cr-224-CEM-EJK

JORGE IVAN ORTIZ BUIL

FACTUAL BASIS

Starting in March 2021, the Internal Revenue Service – Criminal Investigation ("IRS") and the Federal Bureau of Investigation ("FBI") investigated a ring of conspirators involved in laundering the proceeds of computer fraud and business email compromise schemes by routing payments to fake businesses in the Middle District of Florida and transferring those funds to offshore accounts in China. This investigation revealed the following true facts about this conspiracy and JORGE IVAN ORTIZ BUIL's participation in this conspiracy:

***Identification of MORALES and LABOUR***

In the course of an ongoing money laundering investigation, the IRS and FBI identified a bank account held by a business at a Wells Fargo in Deltona, Florida in March 2021.  The business was a company named Morales Primitive, Inc. and the nature of the transactions in that account strongly indicated that this account was used for money laundering.  In the first two weeks of March 2021, Morales Primitive, Inc. received a total $768.485.10 in incoming wire transfers from a

Defendant's Initials JOB                    19

company, T.C., and, upon receipt of those wire transfers, would wire transfer those

funds to companies located in China.  The recipients of those funds included

company accounts referred to in these legal proceedings as Offshore Account 1 in

Zhejiang, China, Offshore Account 2 in Weifang, China, and Offshore Account 3 in

Weifang, China.

When the IRS and FBI interviewed representatives of T.C., they learned that

none of the wires from T.C. were intentionally directed to Morales Primitive Inc.

and T.C. had no legitimate business with Morales Primitive Inc.  Instead, employees

of T.C. reported that their business had been the victim of a business email

compromise scheme and that someone had accessed T.C.'s email system to falsely

request the unauthorized wires be sent to Morales Primitive Inc. at the bank account

at Wells Fargo.

Further investigation into Morales Primitive, Inc. revealed that this was a fake

company with no real business that was opened by Jihad MORALES for the purpose

of laundering the proceeds of this computer and wire fraud scheme.  The records of

spending of the funds from the Morales Primitive, Inc. bank account also revealed

the participation of Cristian Rodriguez LABOUR.  In February 2022, law

enforcement executed a search warrant of LABOUR's cellular phone.  Through the

records of communications from LABOUR's cellular phone, cell phone tolls records,

bank records, and other sources, investigators were able to identify the structure of

Defendant's Initials ⟋⟍⟋⟋⟍     20

this money laundering scheme and its participants.  Essentially, LABOUR recruited individuals such as MORALES and others to use their personal identifiers to create fake businesses in the Middle District of Florida.  The recruited individuals, such as MORALES, would then open bank accounts in the names of the fake businesses. When a wire containing fraud proceeds was sent to those business accounts, LABOUR would relay instructions to the individuals like MORALES to wire the money to an offshore account in China and withdraw a portion of the funds as payment.  LABOUR, MORALES, and other conspirators would then split the proceeds of those withdrawals.

*Buil Top Chamber, Inc* ~~DEH~~ ~~TBT~~ ~~JOB~~

***Participation of ORTIZ BUIL and Creation of Fake Business*** ~~*AGR Full Force Inc.*~~

LABOUR recruited JORGE IVAN ORTIZ BUIL ("ORTIZ BUIL") into this scheme in October of 2021. RODRIGUEZ introduced LABOUR to ORTIZ BUIL, who was RODRIGUEZ's cousin. On or about November 22, 2021, ORTIZ BUIL gave LABOUR and his conspirators his personal identifiers and LABOUR and his conspirators incorporated the business Buil Top Chamber Inc. with the state of Florida. The formation documents for this business identify ORTIZ BUIL as the registered owner and his home address in the Middle District of Florida as the principal place of business. Buil Top Chamber Inc. was a fake business with no legitimate or lawful purpose.

Defendant's Initials  JOB                21

Throughout this scheme, ORTIZ BUIL used a telephone number with digits ending #1218 and a WhatsApp account associated with this same telephone number. Throughout this scheme, ORTIZ BUIL would create bank accounts for the fake business Buil Top Chamber Inc. When large sums of money were transferred into those accounts, ORTIZ BUIL would quickly transfer most of those funds to offshore accounts held by businesses in China and would withdraw money from the accounts. ORTIZ BUIL would then keep a portion of the withdrawn money and give a portion of the withdrawn money to LABOUR and others within the conspiracy. During these transactions, ORTIZ BUIL acted at the direction and supervision of LABOUR and other conspirators.

### *Buil Top Chamber Inc. Bank of America Account #7840*

On December 1, 2021, ORTIZ BUIL opened a business checking account in the name of Buil Top Chamber Inc. at a Bank of America in Orlando ending in #7840. ORTIZ BUIL had sole signatory authority for this account. In December 2021, a fake invoice was submitted to a Texas-based company P.C.C. LLC. The fake invoice sought $1,096,000 and directed payment to the Bank of America Account #7840. The invoice was identified as fraudulent and no funds were sent. ORTIZ BUIL and Buil Top Chamber Inc. had no legitimate business with P.C.C. LLC. The P.C.C. LLC wire to Bank of America Account #7840 was the result of an attempted business email compromise scheme. Bank of America closed Account

Defendant's Initials _JoB_                    22

#7840 on or about December 24, 2021.

On January 7, 2021, ORTIZ BUIL messaged LABOUR through WhatsApp, stating "They blocked Bank of America" and "the woman who opened the account said the Risk Department decided to close the account." LABOUR and ORTIZ BUIL then discussed using different bank accounts in this scheme.

### *Buil Top Chambers Inc. JP Morgan Chase Account #9731*

On or about December 10, 2021, ORTIZ BUIL opened a business checking account for Buil Top Chamber Inc. at JP Morgan Chase in Orlando ending in #9731. ORTIZ BUIL was the sole signatory on the account.  This account had no legitimate or lawful purpose.  Buil Top Chamber Inc. was a fake business with no lawful business and was designed to conceal unlawful proceeds.

Among other things, the bank records reveal that ORTIZ BUIL initiated the following wire transfers and withdrawals using the JP Morgan Chase Account #9731 for the fake business ~~AGR Full Force, Inc.~~ BUIL TOP CHAMBER, INC. :

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|---|---|---|---|---|---|
| 12/23/21 | $52,965.76 | G.L. SE | | | |
| 12/23/21 | $12,933.23 | H.R.E. | | | |
| 12/23/21 | | | | | $700.00 |
| 12/24/21 | | | | | $9,500.00 |
| 12/27/21 | | | | | $700.00 |
| 12/27/21 | | | | | $500.00 |
| 12/27/21 | | | $49,850.00 | #4 in Shouguang, China | |
| 12/27/21 | | | $4,450.00 | #4 in Shouguang, China | |

Defendant's Initials ___  23

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|------|---------------|------|---------------|---------------------|-------------|
| *Totals* | *$65,898.99* | | *$54,300.00* | | *$11,400.00* |

ORTIZ BUIL and Buil Top Chamber Inc. had no legitimate business with G.L. SE,

H.R.E., or the business holding Offshore Account 4 in Shouguang, China. The wire

from G.L. SE was the result of a business email compromise of a different business,

B.P. Inc.  B.P. Inc. had a relationship with G.L. SE and one of B.P. Inc.'s

employee's email address was "spoofed" to initiate a fake wire from B.P. Inc. to JP

Morgan Chase Account #9731 held by the fake business Buil Top Chamber Inc.  In

the above transactions, ORTIZ BUIL knew that outgoing wire transfers were

intended to conceal the proceeds of unlawful activity.

### *Buil Top Chambers Inc Wells Fargo Account #5626*

On December 6, 2021, ORTIZ BUIL opened a bank account in the name of

Buil Top Chamber Inc. with Wells Fargo Bank in Orlando ending in the last four

digits #5626. ORTIZ BUIL had sole signatory authority.  ORTIZ BUIL told Wells

Fargo Bank that Buil Top Chamber Inc. was in the wholesale kitchen appliance

business. This was not true.  Buil Top Chamber Inc. was a fake business with no

lawful business and was designed to conceal unlawful proceeds.  Among other

things, the bank records reveal that ORTIZ BUIL initiated the following wire

transfers and withdrawals using the Wells Fargo Account #5626 for the fake

business Buil Top Chamber Inc.:

Defendant's Initials _JOB_                    24

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|------|--------------|------|--------------|---------------------|-------------|
| 1/26/22 | $2,000.00 | W.T.S. Inc. | | | |
| 1/26/22 | $100,000.00 | W.T.S. Inc. | | | |
| 1/27/22 | | | | | $9,500.00 |
| 1/27/22 | | | | | $600.00 |
| 1/28/22 | | | | | $4,000.00 |
| 1/28/22 | | | $84,600.00 | #2 in Weifang, China | |
| *Totals* | *$102,000.00* | | *$84,600.00* | | *$14,100.00* |

ORTIZ BUIL and Buil Top Chamber Inc. had no legitimate business with W.T.S. Inc. or the business holding Offshore Account #2 in Weifang, China. The wire from W.T.S. was the result of a business email compromise in which a third party supplier's email had been hacked, and W.T.S. received a request from that email requesting that the wires be sent to Wells Fargo Account #5626 (belonging to the fake business Buil Top Chamber Inc.).

Starting on January 26, 2022, ORTIZ BUIL and LABOUR exchanged a series of messages on WhatsApp about the $102,000 in incoming wires. On January 27, 2022, LABOUR forwarded instructions for ORTIZ BUIL to wire to an Offshore Account #2 in Weifang, China and told him "Obviously, withdraw first. Let me know when you withdraw." ORTIZ BUIL responded as he was doing this and then confirmed when the withdrawal was made.  On January 28, 2022, LABOUR sent instructions for ORTIZ BUIL to send $84,600 to Offshore Account #2 in Weifang, China.  LABOUR and ORTIZ BUIL then communicated while ORTIZ BUIL was

Defendant's Initials  JOB                    25

in line in the bank. After the transaction, LABOUR messaged, "There is more work coming."

In the above transactions at Wells Fargo Account #5626, ORTIZ BUIL knew that outgoing wire transfers were intended to conceal the proceeds of unlawful activity, and the withdrawals from the account were structured to avoid the $10,000 currency reporting requirement.

### *ORTIZ BUIL's Recruitment of N.A.G.*

In January 2022, ORTIZ BUIL and LABOUR exchanged a series of WhatsApp communications about ORTIZ BUIL recruiting N.A.G., one of his relatives into the scheme. In early January, ORTIZ BUIL relayed that N.A.G. was "backing out on me" and LABOUR responded "not to pressure her if she is unsure she wants to do it" because "once the documents arrive to open the accounts, they need a person focused on that. . . . Some people say yes, and then under pressure do not understand anything about the accounts, and then I am the one getting upset."

On or about January 17, 2022, ORTIZ BUIL and LABOUR had an audio call via WhatsApp. After that audio call, ORTIZ BUIL sent N.A.G.'s full name, social security number, and date of birth to LABOUR. On January 18, 2022, NAG Ultimate Group, Inc. was incorporated with the Florida Division of Corporations. The incorporation documents show N.A.G. as the registered agent and ORTIZ BUIL and N.A.G.'s shared home address as the principal place of business.

Defendant's Initials _JOB_          26

Starting on February 3, 2022, ORTIZ BUIL and LABOUR discussed via WhatsApp whether ORTIZ BUIL should invest in a car or a house.  In that conversation, LABOUR referred to N.A.G. being "activated" and "a car would allow [ORTIZ BUIL] to move around." ORTIZ BUIL responded that those were "his thoughts exactly. Right now [ORTIZ BUIL and N.A.G.] are managing, but with a car, he could open more accounts and recruit more people."

On February 3, 2022, LABOUR sent ORTIZ BUIL a copy of the letter from the IRS assigning an EIN to NAG Ultimate Group, Inc.  ORTIZ BUIL sent one audio message indicating that he would "have the accounts opened by" N.A.G. and "with the next job, I'm planned to start recruiting more people."  ORTIZ BUIL told LABOUR he would go with her to support her at certain banks and getting appointments for others.  ORTIZ BUIL asked LABOUR "if it is still the same, appliances and such," so he could "prepare [N.A.G.] for when she goes to open the accounts."  In this comment, ORTIZ BUIL was confirming that N.A.G. should pretend that NAG Ultimate Group, Inc. was in the same line of business – kitchen appliances – as that in which ORTIZ BUIL's fake business, Buil Top Chamber Inc., had pretended to be engaged. LABOUR responded that the "answers are easy, all the same."

In the ensuing transactions, N.A.G. acted in this scheme at the direction and supervision of ORTIZ BUIL and other conspirators.

Defendant's Initials _JOB_                   27

**_NAG Ultimate Group Inc. – TD Bank Account #5919_**

On February 4, 2022, N.A.G. opened a business checking account for NAG Ultimate Group, Inc. with TD Bank in Orlando ending in digits #5919. N.A.G. had sole signatory authority. During this time, LABOUR and BUIL ORTIZ were communicating about N.A.G.'s opening of this account. No money was ultimately laundered in this account.

**_NAG Ultimate Group Inc. – Wells Fargo Account #0744_**

On February 7, 2022, N.A.G. opened a bank account for NAG Ultimate Group, Inc. with Wells Fargo Bank in Orlando ending in digits #0744. N.A.G. had sole signatory authority.  N.A.G. told Wells Fargo Bank that NAG Ultimate Group, Inc. was in the kitchen appliance business. This was not true.  NAG Ultimate Group, Inc. was a fake business with no lawful business and was designed to conceal unlawful proceeds.

On February 7, 2022, BUIL ORTIZ and LABOUR communicated on WhatsApp about N.A.G. setting up accounts.  BUIL ORTIZ conveyed to LABOUR by audio message that N.A.G. "wrote to me they are filling the papers for the corporation, meaning the account and all that." LABOUR responded "You left her on her own. You are grooming her." BUIL ORTIZ confirmed with LABOUR "We did it. She passed the test on her own."

Among other things, the bank records reveal that N.A.G. initiated the

following wire transfers and withdrawals using the Wells Fargo Account #0744 for
the fake business NAG Ultimate Group, Inc.:

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|------|--------------|------|---------------|---------------------|-------------|
| 2/22/22 | 41,087.00 | B.A. LLC | | | |
| 2/23/22 | | | | | $5,000.00 |
| 2/23/22 | | | | | $200.00 |
| 2/24/22 | | | $35,635.00 | #6 in Weifang, China | |
| 2/24/22 | | | | | $200.00 |
| *Totals* | *$41,087.00* | | *$35,635.00* | | *$5,400.00* |

N.A.G., ORTIZ BUIL, and NAG Ultimate Group, Inc. had no legitimate
business with B.A. LLC or the business holding Offshore Account #6 in Weifang,
China. The wire from B.A. LLC was the result of a hacked email from a third party
seller of equipment falsely notifying B.A. LLC of a change of wire transfer
instructions and directing B.A. LLC to send wires to Wells Fargo Account #0744
held by the fake business NAG Ultimate Group, Inc.  In the above transactions,
ORTIZ BUIL knew that outgoing wire transfers were intended to conceal the
proceeds of unlawful activity.

### *NAG Ultimate Group Inc. Sun Trust / Truist Account #7570*

On February 7, 2022, N.A.G. opened a business checking account for NAG
Ultimate Group, Inc. with SunTrust/Truist Bank in Orlando ending in digits #7570.
N.A.G. had sole signatory authority. Among other things, the bank records reveal
that N.A.G. initiated the following wire transfers and withdrawals using the Wells

Defendant's Initials _____      29

Fargo Account #0744 for the fake business NAG Ultimate Group, Inc.:

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|---|---|---|---|---|---|
| 2/14/22 | $87,820.00 | L.V.L. Inc. | | | |
| 2/15/22 | | | | | $10,000.00 |
| 2/16/22 | | | | | $190.00 |
| 2/22/22 | | | | | $4,000.00 |
| 2/23/22 | | | $72,000.00 | #5 in Huzhou, China | |
| *Totals* | *$87,820.00* | | *$72,000.00* | | *$14,190.00* |

N.A.G., ORTIZ BUIL, and NAG Ultimate Group, Inc. had no legitimate business with L.V.L. Inc. or the business holding Offshore Account #5 in Huzhou, China.  In the above transactions, ORTIZ BUIL knew that outgoing wire transfers were intended to conceal the proceeds of unlawful activity.

In all of the conduct outlined above, ORTIZ BUIL agreed with others to try to accomplish an unlawful plan to conduct, or attempt to conduct, financial transactions, knowing that the money involved in the scheme involved proceeds of some sort of unlawful activity. In addition, ORTIZ BUIL knew that the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds, and the plan did, in fact, involve proceeds of computer fraud and wire fraud. In withdrawing money from the fake business bank accounts, ORTIZ BUIL knew the withdrawals from the account were structured to avoid the $10,000 currency reporting requirement and he committed those withdrawals in the

Defendant's Initials ＪＯＢ                    30

course of participating in the conspiracy to commit concealment money laundering. ORTIZ BUIL agreed with others to accomplish this common and unlawful plan and ORTIZ BUIL knew the unlawful purpose of the plan when he voluntarily joined in it.

The total amount of cash withdrawals from accounts associated with ORTIZ BUIL and N.A.G. outlined above is $45,090.  The best readily provable estimate of the amount that ORTIZ BUIL received in compensation for participating in this scheme is 25% of the cash withdrawals, or $11,272. The readily provable amount of money laundered through the entire scheme outlined above was $3,323,941.  The conspirators unsuccessfully attempted to launder another $6,145,877 through the scheme outlined above.

Defendant's Initials ___SOB___          31